**FILED**
**Apr 30, 2018**
**01:01 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | | |
|---|---|---|
| Kathy Matheson, | ) | Docket No.: 2017-01-0699 |
| Employee, | ) | |
| v. | ) | |
| QCJC, Inc., | ) | State File No.: 91531-2016 |
| Employer, | ) | |
| And | ) | |
| New Hampshire Ins. Co., | ) | Judge Audrey Headrick |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER

This matter came before the Court on April 17, 2018, on Kathy Matheson's Request for Expedited Hearing. The central legal issue is whether Ms. Matheson is likely to establish at trial that she is entitled to temporary total disability (TTD) benefits. For the reasons set forth below, the Court holds she is entitled to the requested benefits.

### History of Claim

The essential facts of this case are undisputed. Ms. Matheson, a registered nurse, suffered a compensable left knee injury on November 22, 2016. Her treating physician, Dr. David Bruce, referred her to a joint replacement specialist because she previously underwent a left-knee implant. Ms. Matheson selected Dr. Matthew Bernard from a panel, and he scheduled her for surgery on June 19, 2017, to repair the previous knee implant. Dr. Bernard recommended Ms. Matheson remain off work for two weeks after her surgery.

Since Ms. Matheson is a noninsulin-dependent diabetic, Dr. Bernard referred her to her primary care physician for an A1C blood test for surgical clearance. He explained that the A1C provides a better indicator of long-term, blood glucose control. If a patient has a high A1C level, it can lead to infection at the surgical site, delayed wound healing,

1

and hardware implant failure. For those reasons, Dr. Bernard wants his patients to have an A1C level of eight or lower before proceeding with surgery. Since Ms. Matheson's A1C level was eleven point nine, he postponed the June 19 surgery.[1]

Dr. Bernard performed Ms. Matheson's surgery on December 5 after her A1C level dropped to seven point six. He testified that the sole reason for the delay was due "[t]o her elevated hemoglobin A1C and uncontrolled diabetes." (Ex. 5.) Dr. Bernard explained that "[d]iabetes is an incredibly difficult disease to manage over a lifetime," and the diabetic medications a patient needs may change over time. *Id.*

QCJC, Inc. (QCJC) paid Ms. Matheson TTD benefits through August 1, 2017, but it stopped paying benefits from August 2 through November 13 because of the delay in performing surgery due to the diabetic issues. It resumed TTD payments on November 14 when Dr. Bernard advised he could perform surgery.

Ms. Matheson argued that she is entitled to TTD benefits from August 2 through November 13. She also argued that the rule in Tennessee is that an employer takes an employee as it finds her, and "no one's health is perfect."

QCJC countered that the delay in Ms. Matheson's surgery was due solely to her personal health condition. It relied on *Mace v. Express Services, Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 49, *7-8 (Dec. 11, 2015) which held that temporary total disability benefits are paid while an employee is completely unable to work because of the injury.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

Ms. Matheson must present sufficient evidence that she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The Court holds Ms. Matheson would likely prevail at a hearing on the merits regarding her request for additional TTD benefits.

### *Temporary Total Disability Benefits*

Ms. Matheson requests payment of TTD from August 2, 2017, through November 13, 2017. She is eligible for TTD benefits if: (1) she became disabled from working due to a compensable injury; (2) a causal connection exists between the injury and her inability to work; and (3) she established the duration of her disability. *Jones v. Crencor*

---

[1] Prior to her work injury, Ms. Matheson testified that she routinely had the A1C test one to two times per year. She also stated this was not the first time she had a high A1C level.

2

*Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). TTD benefits cease upon her ability to return to work or when she reaches maximum medical improvement. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978).

The holding in *Rogers v. B.F. Shaw*, 813 S.W.2d 397 (Tenn. 1991) is instructive.[2] There, the employee developed asbestosis due to his work as a pipe fitter. The employee ultimately developed lung cancer. In an effort to save the employee's life, his physician recommended removing his lung. Pre-surgical testing revealed a coronary artery blockage that necessitated bypass surgery. Such surgery was required before his physician could perform the work-related lung surgery. The employee suffered a stroke during the bypass surgery and ultimately died.

The issue in *Rogers* was whether the bypass surgery was "reasonably required" under Tennessee Code Annotated section 50-6-204 in order to treat his occupational lung disease. *Id*. at 400. The Court first noted the long-held rule that an employer takes an employee "as he is" with his pre-existing conditions. *Id*. at 399. Further, it noted the direct and natural consequence rule states, in part, "that all the medical consequences and sequelae that flow from the primary injury are compensable." *Id*. at 400. The Court found that the proof showed that bypass surgery was reasonably required to treat the work-related lung cancer, and it held that the employee's death due to that treatment was compensable.

Under the current Workers' Compensation Law, an employer must "furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a). Here, Dr. Bernard required Ms. Matheson to have an A1C blood test level of eight or lower before proceeding with her work-related, knee surgery. He testified the only reason for delaying her surgery from June 19, 2017, to December 5, 2017, was due to her high A1C level. Therefore, the Court finds that the medical proof shows that the pre-surgical clearance testing requirement that Ms. Matheson have an eight or lower A1C level was "made reasonably necessary" in order to treat her knee injury.

After so finding, the Court next considers the criteria for entitlement to TTD benefits. First, Ms. Matheson satisfied the requirement that a compensable injury disabled her from working. It is undisputed that Ms. Matheson sustained a compensable knee injury, and Dr. Bernard took her off work from June 13, 2017, forward. Second, she

---

[2] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord*, at *13 n.4.

3

established a causal connection between the injury and her inability to work. It is undisputed that Dr. Bernard took Ms. Matheson off work due to her knee injury, and his pre-surgical clearance testing requirement was "made reasonably necessary" in order to treat that injury. Finally, Ms. Matheson satisfied the third criteria based on the undisputed period of disability from August 2, 2017, through November 13, 2017.

Thus, the Court holds Ms. Matheson is likely to prevail at a hearing on the merits in proving she is entitled to temporary total disability benefits from August 2 through November 13. The parties stipulated Ms. Matheson's compensation rate is $853.33 per week and, based on that rate, she is entitled to payment of $12, 678.05 for the period of August 2 to November 13, 2017.

**IT IS, THEREFORE, ORDERED** as follows:

1. QCJC shall pay past due temporary total disability benefits of **$12,678.05** for the period from August 2, 2017, to November 13, 2017.

2. This matter is set for a Status Hearing on Tuesday, June 19, 2018, at 10:00 a.m., Eastern Time. You must call 423-634-0164 or toll-free at 855-383-0001 to participate. Failure to call may result in a determination of the issues without your participation.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2017). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED April 30, 2018.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

4

# APPENDIX

Exhibits:
1. First Report
2. Panels
3. Notice of Controversy
4. Affidavit of Kathy Matheson
5. Deposition of Dr. Matthew Bernard
6. Table of Contents to Deposition (Curriculum Vitae, Lab Results, and Medical Records)

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Show Cause Order
4. Order on Show Cause Hearing
5. Request for Expedited Hearing
6. Notice of Objection
7. Order Setting Claim for Expedited Hearing
8. Notice of Expedited Hearing
9. Notice of Filing Deposition
10. Notice of Filing Exhibits with Table of Contents
11. Expedited Hearing Brief of Employer and Carrier

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on April 30, 2018.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| Scott Wesson, Employee's Attorney | | X | scottwesson@warrenandgriffin.com |
| David J. Deming, Employer's Attorney | | X | ddeming@manierherod.com<br>tjoiner@manierherod.com |

w/permission JD

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

6



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *five business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within five business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)                                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries    $ _____ per month    Telephone    $ _____ per month

Electricity    $ _____ per month    School Supplies $ _____ per month

Water    $ _____ per month    Clothing    $ _____ per month

Gas    $ _____ per month    Child Care    $ _____ per month

Transportation $ _____ per month    Child Support $ _____ per month

Car    $ _____ per month

Other    $ _____ per month (describe: _____ )

10. Assets:

Automobile    $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____    (FMV) _____

Other    $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____ , 20_____ .

_____

NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)         RDA 11082